IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DUNLAP V. DUNLAP


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CHRISTOPHER J. DUNLAP, APPELLANT AND CROSS-APPELLEE,

V.

SHAWNA I. DUNLAP, APPELLEE AND CROSS-APPELLANT.


Filed December 8, 2015.    No. A-14-1169.


Appeal from the District Court for Thayer County: VICKY L. JOHNSON, Judge. Affirmed as modified.

Daniel L. Werner, P.C., L.L.O. for appellant.

Ronald R. Brackle for appellee.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Christopher Dunlap appeals the decision of the district court for Thayer County which amended the decree of dissolution of the parties upon a complaint to modify. Shawna Dunlap, now known as Shawna Ware, cross-appeals asserting the trial court erred in failing to find a material change of circumstances. For the reasons that follow we affirm as modified.

### BACKGROUND

A complaint to dissolve the marriage of Christopher and Shawna was filed by Christopher on November 9, 2011. The parties signed a parenting plan concerning the care and custody of Carter, the minor child of the parties, who was 3 years old at the time. The parenting plan provided for joint physical and legal custody, with equal parenting time to take place every other week

- 1 -

beginning at 7 p.m. on Saturday and going until the following Saturday at 7 p.m. It also contained a provision stating that if the parties were unable to reach an agreement:

> The father shall have the final say in choices regarding their child's education, religious upbringing and medical needs. Recognizing, however, that it is important that both parents participate and cooperate with each other to bring up their child in a loving, stable environment, the father shall, in an effort to encourage this environment, notify the mother at a meaningful time, in advance of any decision regarding enrollment in school, and/or the beginning of healthcare involving the child.

A hearing on Christopher's complaint for dissolution took place on October 4, 2012. At the hearing, Christopher was represented by counsel, but Shawna appeared without counsel and indicated to the court that she wished to proceed without a lawyer. The parties agreed in open court that Carter would attend preschool in Palmer, Nebraska and reside primarily with Shawna during the academic year. The parties acknowledged that this would change the amount of parenting time for Christopher during the school year. While Carter was in preschool, Christopher would have Carter three days per week, every other week. They agreed to return to the alternating week schedule during the summer months. Accordingly, an updated joint custody child support calculation was prepared based upon the time the child would actually spend with each party. The calculation was submitted to the court and incorporated into the decree.

The parties also agreed that when Carter started school full-time, he would go to school in Palmer and live with Shawna. The court asked Christopher if he wanted the parenting plan to be changed to reflect that agreement, and he replied "yes." Shawna testified that it was her intention to have Carter live with her during the school year so Carter could attend school in Palmer. She agreed this would result in her having Carter for more days than Christopher and she agreed to the arrangement.

At the end of the hearing Christopher's attorney stated he had a decree, but added "obviously it will have to be amended," based on the testimony presented at the hearing. The court found that it was in the best interests of the minor child "that custody be awarded jointly to the parties subject to the parenting plan of the parties as they have modified it here in open court to reflect the current status of the physical custody."

The decree of dissolution of the parties' marriage was entered on November 1, 2012. The decree ordered child support based upon a joint custody calculation. The amendments the parties had agreed to at the hearing on October 4 were not incorporated into the decree. No explanation for this appears in the record before us.

Christopher and his new wife, Hannah, live in Shickley. In August 2013, Christopher unilaterally decided Carter should enroll in the Shickley Public Schools. Christopher gave Shawna approximately one week of notice that he would not be returning Carter to Shawna's care for the start of the kindergarten year in Palmer. The decision to enroll Carter in Shickley necessarily changed the joint custody arrangement as the distance from Shickley to Shawna's home was prohibitive of Carter living with Shawna during the school week.

On October 11, 2013, Shawna filed a complaint to modify the decree and parenting plan alleging a material change of circumstances. Christopher filed an answer denying that there was a material change of circumstances and further denying that it was in Carter's best interests to award

custody to Shawna. The answer went on to affirmatively allege that if there was a material change of circumstances, it would be in Carter's best interests to award custody to Christopher and to enter an award of child support consistent with the Nebraska Child Support Guidelines.

The parties appeared for a hearing on Shawna's complaint on December 16, 2014. Shawna testified that on August 13, she went to the location where she and Christopher normally would meet to transfer Carter, and Christopher did not appear. Subsequently, Christopher told Shawna that he was not going to bring Carter back. Shawna stated that Christopher did not discuss this decision to change schools with her prior to enrolling Carter in the Shickley school system. He did not consult Carter's counselor, Sandra Hale Kroeker, or offer to mediate the issue with Shawna. Shawna testified that while the complaint to modify was pending, the schools in Palmer, Wolbach, and surrounding communities were consolidated. If Carter was to return to Shawna's home, he would attend the North Loup-Scotia consolidated school which is a 20-minute bus ride away, rather than the public school in Palmer.

Kroeker testified that she is a licensed clinical social worker who had worked with members of the Dunlap family for a number of years. She testified that she began counseling Christopher, his daughter from a previous relationship, KayLee Jo, and KayLee's biological mother in connection with KayLee's diagnosis of reactive attachment disorder in 2004. She said KayLee was placed into a voluntary placement with Christopher's parents while Kroeker worked with Shawna, Christopher, KayLee and KayLee's mother to establish a relationship and transition to reunification. She said that KayLee was at the point of transitioning to the family home when Shawna and Christopher separated and began the process of divorce, and the family decided to keep KayLee in the "secure environment" at her grandparents' home. Kroeker testified that KayLee continued in counseling and the focus shifted from reintegrating into Christopher and Shawna's home to reintegrating into Christopher and Hannah's home.

Kroeker testified that she began seeing Carter in May 2013 because there had been a significant number of changes and losses that were occurring in Carter's life at the time, including his father's remarriage to Hannah, the period of separation and divorce, and a home change. Kroeker asked the "parents" and teachers to evaluate him, and performed clinical interviews with him. She testified that Christopher and Hannah reported to her that Carter was experiencing changes in school environment, anxiety in transitions to visitation, and he was having behavioral problems including regressed infantile behavior and difficulty focusing and recognizing social cues. Kroeker did not meet with Shawna or Shawna's husband.

Kroeker was asked what would happen if Carter was moved to another town, area, or home and she said it would likely cause severe emotional pain and damage because he would be thrown into another "major loss," similar to those losses he had already suffered as a result of the parties divorce, and the change of the school and custody arrangement beginning in August 2013. She said Carter had already experienced major losses, including changes related to the divorce and a shift from his mother to his father as his primary caretaker. She described the period of displacement and adjustment where he had to identify where he lived and belonged, and who his support system would be. She said that changes in location, including taking a child to live in another place can contribute to adjustment issues and disorders.

Christopher testified that the decision in August 2013 was made because he believed it was in Carter's best interests. He testified that he was concerned about perceived safety risks in Shawna's home, Carter's asthma, and speculation that Shawna might decide to move to Iowa.

The court's order, entered December 24, 2014, noted that "a great deal of time and energy was spent trying this modification action in an obvious attempt to show that Christopher is now the better parent and that Carter has flourished in his father's care." The court found that was not the issue before it; rather, it was whether there was a material change in circumstances indicating a change in custody was in the best interests of the minor child. The court found that such change was not shown.

The order amended the decree nunc pro tunc to reflect the parties' testimony regarding their custody agreement as stated at the October 4, 2012 hearing. The court found that joint legal custody should be continued by the parties, with the following changes to the decree regarding physical custody:

> 1. During the school year, Carter shall reside with his mother, and his father is awarded parenting time on alternating weekends.
> Summer break shall be divided on a week to week alternating basis with the parties.
> 2. The Paragraph entitled "Parenting Responsibilities and Cooperation," awarding Christopher the right to determine where Carter shall go to school, is deleted, as it is not in conformity with the testimony of the parties and is inconsistent with a decision of the parties to enjoy joint legal custody.

The court's order acknowledged Kroeker's testimony that changes in location can be stressful for children. However, the court noted that, but for Christopher's unilateral action in August 2013, Carter would not be in a position to experience further emotional stress which could occur as a result of another change in location. The court admonished Christopher and reminded him "that whatever damage may happen to his son as the result of this uprooting is the direct consequence of him taking actions contrary to his sworn testimony, and this court's order." The court found:

> It is equally clear that the only material change in circumstances is the actions of Christopher to disregard his agreement and remove Carter from his mother's physical custody. Not only did he act unilaterally, he failed to follow the terms of the agreement which he invoked which puts a positive obligation on him to discuss his decision with Shawna.

Having amended the decree, the court dismissed the complaint to modify regarding custody.

The court also found that a material change in circumstances had been shown authorizing a change in the amount of child support. A new child support calculation was prepared and the court ordered Christopher to pay $673 per month, retroactive to October 1, 2013.

## ASSIGNMENTS OF ERROR

On appeal, Christopher asserts the district court erred in: (1) altering and revising the terms of the parenting plan by an order nunc pro tunc; (2) changing custody of the child and modifying

the terms of the parenting plan in the absence of a material change in circumstances; and (3) ordering him to pay child support to Shawna retroactive to the month this action was filed.

On cross-appeal, Shawna asserts the trial court erred in not finding a material change of circumstances.

STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial judge, and although reviewed de novo on the record, the trial judge's determination will normally be affirmed absent an abuse of discretion; a "judicial abuse of discretion" requires that the reasons or rulings of a trial judge be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Bohnet v. Bohnet,* 22 Neb. App. 846, 862 N.W.2d 99 (2015).

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or the best interests of the child require such action. *Bird v. Bird,* 22 Neb. App. 334, 853 N.W.2d 16 (2014). The party seeking modification of a decree containing a child custody provision bears the burden of showing a material change of circumstances affecting the best interests of a child. *Bohnet v. Bohnet,* supra.

ANALYSIS

Christopher asserts the trial court's order, amending the parties' decree of dissolution nunc pro tunc, was improper because he was not on notice that an order nunc pro tunc was at issue, the time for appeal of the decree had passed, and the order was not entered for the purpose of correcting a clerical or scrivener's error.

The purpose of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded. *State v. Bol,* 288 Neb. 144, 846 N.W.2d 241 (2014), citing *Interstate Printing Co. v. Department of Revenue,* 236 Neb. 110, 459 N.W.2d 519 (1990). Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court by an order nunc pro tunc at any time on the court's initiative or on the motion of any party. *Willis v. Brammer,* 20 Neb. App. 574, 826 N.W.2d 908 (2013); Neb. Rev. Stat. § 25-2001(3). An order nunc pro tunc operates to correct a clerical error or a scrivener's error, not to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even if such order was not the order intended. *Id.* An order nunc pro tunc cannot be used when the mistake or error at issue is a party's oversight. *Id.*

The changes the court made to the decree in this case cannot be classified as clerical or scrivener's errors. Further, neither party appealed from the original decree, raised the issue of the alleged inaccuracies in the parenting plan, or requested that the court amend its prior decree. Rather this action arose as the result of Shawna's complaint to modify the custody arrangement of the parties. Thus, an order nunc pro tunc under § 25-2001(3) was not appropriate in this case.

Although the judge's order states the decree is amended "nunc pro tunc," when read in its entirety, it is clear the court determined that Carter's best interests would be best served by enforcing the parenting plan the parties had previously agreed to, but failed to accurately set forth in the decree. It is also clear the court determined that Christopher's unilateral decision to disregard

the parties' former agreement and to remove Carter from his mother's physical custody constituted a material change in circumstances warranting modification to the parties' parenting plan. While we disagree with the court's "nunc pro tunc" characterization, for the reasons discussed in further detail below, we agree with its decision to modify the parenting plan. See *Doe v. Board of Regents,* 283 Neb. 303, 809 N.W.2d 263 (2012) (an appellate court will affirm a lower court's ruling which reaches the correct result, albeit based on different reasoning).

*Modification of Parenting Plan.*

Both parties assert the trial court erred in making its findings with regard to a material change of circumstances among the parties. Christopher asserts the trial court "erroneously changed custody and modified the terms of the parties' parenting plan in the absence of a material change of circumstances justifying a change in custody in the best interests of the minor child." Shawna asserts the trial court erred, as it should have found there was a change of circumstances which justified an "inverse modification," or a return to the status quo of the parties prior to August 13, 2013.

Ordinarily custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Coffey v. Coffey,* 11 Neb. App. 788, 661 N.W.2d 327 (2003). A "material change in circumstances" that would justify a modification of child custody means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *McDonald v. McDonald,* 21 Neb. App. 535, 840 N.W.2d 573 (2013).

As previously discussed, the trial court did make a finding that Chris's unilateral decision to disregard the parties' former agreement and to remove Carter from his mother's physical custody constituted a material change in circumstances. However, the court concluded that the material change did not warrant changing the joint legal and physical custody previously agreed to by the parties; rather, the court simply modified the parenting time allocated between the parties and modified language related to parenting responsibilities to reflect the agreement the parties had reached during the hearing in October, 2012. We cannot say this was an abuse of discretion.

Upon a review of the four corners of the decree, the parties agreed to work together as joint custodians for the benefit of their child. They agreed to discuss decisions affecting Carter's "education, religious upbringing, and medical needs." They also agreed that Christopher would notify Shawna in advance of any decisions affecting those areas, discuss any of these issues in an effort to reach an agreement, and that if the parties could not agree, Christopher would have the "final voice." The record also clearly shows that the parties orally agreed to certain amendments to the agreement at the hearing on October 4, 2012, that were not included in the final document. Among these amendments was an agreement that Carter would live with his mother during the school year to attend school in Palmer, and that parenting time would necessarily change to accommodate the school schedule. The parties had agreed that Shawna would provide care on weekdays during the school year, Carter would reside with each parent on alternating weekends, and the parties would revert to a "50/50 split" in the summer months.

However, in August 2013, Christopher unilaterally decided to change the parenting time schedule when he informed Shawna he would not be returning Carter to her on August 13, and

that Carter would be attending school in Shickley. Christopher did not consult with Shawna before making this decision regarding Carter's education, and he did not follow through with the parties' stated plan for Carter to reside with Shawna during the school year to attend school in Palmer. It is clear from the record that Christopher acted in contravention of both the decree as it was written, and the amendments orally agreed to at the October 4, 2012 hearing which were not memorialized in the final decree.

The court admonished Christopher's unilateral action, and found that there was a material change in circumstances as Christopher "disregard[ed] his agreement and remove[d] Carter from his mother's physical custody." Because of the distance between Christopher and Shawna's respective homes, he effectively caused a *change of custody,* which was not authorized by the agreement or the oral changes agreed to at the hearing. (Emphasis supplied.)

In amending the decree, the court found there was a material change of circumstances and implicitly found that it was in the best interests of the minor child to return to the arrangement of the parties as it was presented at the October 2012 hearing.

It is evident from the record that a change occurred subsequent to the entry of the original decree, and it was not contemplated when the decree was entered. We cannot say the trial court abused its discretion by modifying the parties' parenting plan as it did. However, as previously discussed, the trial court erred in amending the decree nunc pro tunc, where it should have determined whether a material change in circumstances had occurred and whether Carter's best interests required a return to what the parties had orally agreed to at the hearing in October, 2012.

Neither party claims that the other is unfit, and the record shows that Christopher and Shawna are both good and fit parents. Based upon our de novo review of the record in this case, a material change in circumstances occurred when Christopher unilaterally decided to change custody of Carter in August 2013. And as was implicit in the lower court's decision, we likewise conclude it was in Carter's best interest to modify the parenting plan regarding his physical custody, and return to the arrangement the parties were following after the hearing in October 2012.

Shawna's complaint to modify sought sole legal and physical custody and termination of the joint legal and physical custody arrangement. Having found a material change of circumstances occurred necessitating a change in physical custody, we find the parties should retain joint legal and physical custody, subject to the parenting time orally agreed to by the parties at the October, 2012 hearing.

In amending the order, the court also removed the provision in the parenting plan granting Christopher "final say" in decisions regarding Carter's education, health, and religious upbringing. The court found the provision was not in conformity with the testimony of the parties and was inconsistent with the decision of the parties to enjoy joint legal custody. We find the trial court's decision to remove the "final say" provision from the parenting plan following Shawna's complaint to modify was not an abuse of discretion.

*Child Support.*

The original child support amount was calculated using the number of days Carter resided with each parent when factoring in his preschool schedule. The decree ordered Christopher to pay support to Shawna in the amount of $220 per month. Based on the evidence presented at the

December 2014 trial, the court found a material change of circumstances had occurred authorizing an increase in the child support amount to $673 per month. The court ordered the change to be paid retroactive to October 1, 2013, the first day of the month Shawna's complaint to modify was filed.

Christopher asserts the trial court erred in ordering that the modified child support be paid retroactively to October 1, 2013. He asserts retroactive support is inappropriate because at the time of the filing Carter was living with him and attending school in Shickley. Christopher does not challenge the amended child support calculation, he only assigns as error the date the new calculation would take effect.

In determining whether to order retroactive support, a court must consider the parties' status, character, situation, and attendant circumstances. *McDonald v. McDonald, supra*. The record shows Carter was only in Christopher's care because Christopher transferred Carter's school enrollment, thereby unilaterally, and erroneously, changing the parties' parenting time arrangement.

Based upon our review of the record, we cannot find the trial court abused its discretion in ordering retroactive child support. However, we note Nebraska case law provides that absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *McDonald v. McDonald,* citing *Emery v. Moffett,* 269 Neb. 867, 697 N.W.2d 249 (2005). Thus the amended child support order should have been effective the first day of the month following the filing of Shawna's complaint to modify, rather than the first day of the month the complaint was filed. Thus we modify the order for retroactive child support to begin on November 1, 2013, and affirm the award of child support as modified.

## CONCLUSION

Although the district court erred in characterizing the amendment of the decree as a nunc pro tunc order, the district court's decision to modify the parties' parenting plan with regard to allocation of parenting time and to remove the "final say" provision was not an abuse of discretion. We further find the district court did not abuse its discretion in ordering retroactive child support, but modify the date the order became effective from October 1, 2013 to November 1, 2013.

AFFIRMED AS MODIFIED.